UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNETH GARDNER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-16982** |
| **BRAND ENERGY SOLUTIONS, LLC, ET AL.** | **SECTION "B"(5)** |

**ORDER AND REASONS**

Defendant Deep Gulf Energy II, LLC filed a motion for summary judgment. Rec. Doc. 65. Plaintiff filed a notice of no opposition. Rec. Doc. 66. For the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 65) is **GRANTED** and Plaintiff's claim against Defendant Deep Gulf Energy II, LLC is **DISMISSED WITH PREJUDICE**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On December 30, 2015, Plaintiff Kenneth Gardner allegedly sustained injuries to his knee and back while working as an electrical assistant on the Devil's Tower, a drilling platform located in the Gulf of Mexico. *See* Rec. Docs. 1 ¶¶ 9-10; 65-2 ¶¶ 1-2. Specifically, Plaintiff was injured when he hit his knee on a nail head on a scaffold that had been constructed on the platform. *See* Rec. Doc. 1 ¶ 10. At the time of the accident, Plaintiff "was employed by Omega Natchiq . . . ." *Id.* ¶ 9.

Deep Gulf Energy II, LLC contracted with various companies for construction projects on the platform. *See* Rec. Doc. 65-2 ¶¶ 6-12. Two of these companies were Omega Natchiq, LLC and

1

Performance Energy Services (PES). *See id.* ¶¶ 6, 8. The contracts that Deep Gulf executed with Omega and PES state that Omega and PES are independent contractors. *See id.* ¶¶ 7, 9. Omega was hired to do electrical work on the platform and PES was hired to erect scaffolding on the platform. *See id.* ¶¶ 10-12. When Plaintiff was injured, he was assisting with Omega's electrical work on scaffolding that PES had erected. *See* Rec. Doc. 1 ¶ 10.

In December 2016, Plaintiff brought a negligence claim against Deep Gulf, arguing that the condition of the scaffolding created an unsafe work environment. *See* Rec. Doc. 1. In May 2018, Deep Gulf filed the instant motion for summary judgment, arguing that it is not liable for the negligent acts of its independent contractors. *See* Rec. Doc. 65. Plaintiff then filed a notice of no opposition. *See* Rec. Doc. 66.

## **LAW AND ANALYSIS**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. But "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Even when a motion for summary judgment is unopposed, the movant must still carry its burden of showing that there is no genuine issue of material fact. *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). When the movant meets its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618.

Plaintiff invokes the jurisdiction of the Outer Continental Shelf Lands Act (OCSLA) because his accident occurred on a stationary platform attached to the outer continental shelf. *See* Rec. Docs. 1 ¶¶ 7, 9; 7 ¶¶ 2, 7; *see also* Rec. Doc. 65-4 ¶¶ 5, 7, 8. OCSLA "mandates that when disputes arise involving fixed structures erected on the outer Continental Shelf, applicable laws of the adjacent state will be applied to the extent not inconsistent with other federal laws and regulations." *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911 (5th Cir. 1997). Here, because the

platform is located off the coast of Louisiana, Louisiana negligence law is applicable. *See* Rec. Docs. 1 ¶ 9; 7 ¶ 7; 65-4 ¶ 6; *Coulter*, 117 F.3d at 911.

Under Louisiana negligence law, "a principal . . . cannot be liable for injuries resulting from the negligent acts of an independent contractor . . . unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts." *Coulter*, 117 F.3d at 911-12. Assembling scaffolding and completing electrical work is not ultrahazardous. *See, e.g.*, *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 371-72, 379-84 (5th Cir. 2001) (holding that use of a "perforation gun," which fires explosive charges, was not ultrahazardous). Therefore, the only question is whether Deep Gulf retained operational control of Omega and PES, which "requires an examination of whether and to what extent the right to control work has been contractually reserved by the principal." *Coulter*, 117 F.3d at 912. "Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003).

Deep Gulf's contracts with Omega and PES state that they are independent contractors, that Deep Gulf "shall have no direction or control" over Omega or PES, and that Deep Gulf will only have the general rights of "approval" and "inspection." Rec. Docs. 65-5 at 5; 65-6 at 5. PES was tasked with scaffolding work on the platform and Omega was tasked with performing electrical work using the scaffolding. *See* Rec. Docs. 65-7; 65-8. Deep Gulf did not have employees supervising the work on the platform when Plaintiff's accident occurred. *See* Rec. Doc. 65-4 ¶ 13. In Plaintiff's deposition, he stated that he only received instructions from his Omega supervisor, not from Deep Gulf. *See* Rec. Doc. 65-9 at 60. Similarly, a PES representative explained in his deposition that Deep Gulf did not directly control or supervise the construction of the scaffolding. *See* Rec. Doc. 65-11 at 27. Accordingly, Deep Gulf is entitled to summary judgment because it has demonstrated that there is no genuine issue of material fact about whether it exerted operational control over Omega and PES. *See Fruge*, 337 F.3d at 564-65 (affirming summary judgment in favor of principal because periodic inspections of independent contractor's work did not equate to operational control); *Coulter*, 117 F.3d at 912 (affirming summary judgment in favor of principal because general approval of work plan was not evidence that principal "explicitly or implicitly authorized" an unsafe practice). Plaintiff, by

filing a notice of no opposition, has presented no evidence that creates a genuine issue of material fact. *See* Rec. Doc. 66.

New Orleans, Louisiana, this 5th day of June, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE